WROUGHT IRON RANGE COMPANY *v.* YOUNG.

Opinion delivered June 10, 1905.

1.  CONTRACT—SETOFF.—Where a superintendent of salesmen entered into separate annual contracts with his employer for three successive years, which differed only in their dates, and sued on two of them to recover amounts due him by the employer, the latter may setoff against such claim sums due by the former under the contract for the third year.   (Page 20.)

2.  SAME—LIABILITY FOR PERMITTING OVERDRAFTS.—Where a contract for the employment of a superintendent of salesmen stipulated that he should be liable if he permitted any man under his supervision to overdraw the monthly allowances due him for his work, the superintendent was not liable because sums belonging to the employer were appropriated by the salesman to their own use, without the permission, knowledge or contract of the superintendent; but if he permitted them to retain out of their collections more than their monthly allowances, he became liable therefor as for overdrafts.   (Page 21.)

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

Reversed.

STATEMENT BY THE COURT.

During the years 1897, 1898 and 1899, S. K. Young was employed by the Wrought Iron Range Company to take supervision of salesmen engaged in selling Home Comfort Ranges manufactured by the defendant. The company agreed to allow him for his services about $2 on each range sold by men under his supervision. But when a range was sold on credit, the commission was not due until the notes given for the same were collected.

On his part Young agreed:

"1. To discharge the duties required of him strictly and faithfully; to devote all his time to the business of said company, in such territory and in such manner as may be prescribed by it; to keep careful oversight of the expenses of the men under his

supervision, keeping their and his own expense account to the lowest possible limit, and to accept said commission, as provided, in full satisfaction for his services.

"2.  To personally inspect all notes and sales made by men under his supervision, and to ascertain if any promises or verbal agreements have been made by such men and left unfilled; to report each month to his general superintendent the work inspected and its condition; to settle the books of all men under his supervision on or about the first of each calendar month, and transmit them immediately, together with· his monthly report and all cash on hand in excess of $500, to said company, at Denver.  Any failure upon his part to discharge these duties shall be sufficient grounds for the termination of this contract.

"3.  Not to draw for his personal use more than $100 per month until the final settlement at the expiration of this contract.

"4.  Ten per cent. of all losses upon notes received for sales made by men under his supervision during the term of this contract shall be deducted from amount due him; and any balance due on notes for ranges taken up and returned to the company shall be accepted as losses.

"5.  Under no circumstances will he permit any man under his supervision to overdraw the monthly allowance due him for his work.  In the event of such overdraft, same to be charged to the account of the party of the second part."

A separate contract was signed for each year of service, but these contracts, with the exception of the dates, were the same.

Afterward S. K. Young brought an action at law against the defendant company in which he alleged that the company was owing him $774.57 for commissions due January 1, 1899, for sales made by men under his supervision for the years 1897 and 1898, and the further sum of $600 for commissions for sales made on credit during the year 1898 and not realized on until the year 1899, and which were due January 1, 1900, and also the further sum of $600 for services as superintendent during the year 1898, outside of the contract referred to.  Wherefore he asked

judgment against the company for the amounts named, with interest.

The defendant in its answer denied that it was due the plaintiff any sum upon the contracts sued on, and denied that plaintiff performed any services not included in the contracts made by him, and denied that it was indebted to plaintiff anything either on the account or for extra services. Defendant further alleged by way of counterclaim and setoff that during the year 1897 the plaintiff overdrew his personal account $80.78, and, further, that during the years 1897, 1898 and 1899 he permitted salesmen under his supervision to draw, in excess of the commissions due them, sums amounting to $3,748.03, for which overdrafts, it alleged, the plaintiff was liable under the terms of his contract.

On the trial there were a verdict and judgment in favor of the plaintiff for the sum of $1,974.57, from which judgment the defendant appealed.

*J. M. Moore & W. B. Smith,* for appellant.

*Campbell & Stevenson* and *Smead & Powell,* for appellee.

Riddick, J., (after stating the facts.) The plaintiff was employed by the defendant for the years 1897, 1898 and 1899 to have supervision of salesmen selling ranges manufactured by defendant. He sued for commissions due him for the years 1897 and 1898, but it appeared that during the year 1899 plaintiff had overdrawn his account, and that, if the account for 1899 be considered, and plaintiff charged with the amounts advanced to him by defendant during that year, it will materially reduce the amount due from defendant to plaintiff. While the services performed by plaintiff for defendant were continuous during the years named, they were performed under separate contracts; but it is clear, we think, that the amounts due by plaintiff to defendant on the account of 1899 can be used as a setoff against the sums due from defendant to him on the accounts for the years 1897 and 1898. When the accounts for all these years are considered, it seems quite clear that the judgment in this case is excessive, for, if every item claimed by plaintiff is allowed, when

the accounts for 1899 are considered, the judgment is still much too large.

Again, the contract under which plaintiff performed the services for defendant stipulated that he should not permit any man under his supervision to overdraw the monthly allowance due him for his work; and that in the event of such overdraft the same should be charged to the account of the plaintiff. Now, the evidence showed that the men under the supervision of plaintiff retained from time to time various sums collected by them in excess of the amounts due them for their work, and it became a material question in the case as to whether these sums should, under the contract, be charged to plaintiff, and the loss be borne by him, if the sums were never refunded by such salesmen. On this point, we think the court correctly stated the law in his first instruction, in which he said that if those sums were appropriated by the salesmen to their own use without the permission, knowledge or consent of the plaintiff before such sums reached his hands, such retention did not constitute an overdraft within the meaning of the contract. But he refused to give the fifth instruction asked by defendant, in which the converse of that proposition was stated, to the effect that, if plaintiff did permit salesmen to retain out of the moneys paid them on account of sales more than their monthly allowance, then, under the terms of the contract, he was chargeable with such amounts as overdrafts. The refusal to give this instruction, we think, was error prejudicial to the defendant, because, under the facts of this case, it was a question for the jury to determine whether the plaintiff consented to the retention of such amounts by the salesmen under his supervision. If he did consent to the retention by salesmen of sums in excess of their monthly allowance, he was in effect permitting them to overdraw their accounts, and he became liable for such sums under his contract.

For the reasons stated, the judgment will be reversed, and the cause remanded for a new trial, with leave for either party to amend his pleadings so as to include accounts of 1899. It is so ordered.